IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES MCDANIEL, | ) |
| Plaintiff, | ) CASE NO. 20-CV-03351 |
| v. | ) |
| | ) **JURY DEMAND** |
| CHICAGO POLICE OFFICER MATTHEW SANCHEZ, STAR # 10159; CHICAGO POLICE OFFICER CHRISTIAN SZCZUR, STAR # 18774; CHICAGO POLICE OFFICER PIERRE TYLER, STAR # 10228; CHICAGO POLICE OFFICER MOHAMMED AHMED, STAR # 16497; the CITY OF CHICAGO, a municipal corporation; | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff James McDaniel, by his undersigned attorneys, respectfully submits the following Complaint against Defendant Chicago Police Officers Matthew Sanchez, Star # 10159; Christian Szczur, Star # 18774; Pierre Tyler, Star # 10228; and Mohammed Ahmed, Star # 16497:

## INTRODUCTION

1. After unlawfully stopping Plaintiff in June 2019, the Defendant Chicago Police Officers planted a bag of crack cocaine and a firearm in Plaintiff's vehicle and falsely arrested him on phony gun and drug charges. The Defendant Officers subjected Plaintiff to a sham felony prosecution for six months until the Cook County State's Attorney's Office realized Defendants' claims had been fabricated and took the highly unusual step of voluntarily dismissing the serious gun and drug charges against Plaintiff. Plaintiff not only seeks damages against the Defendant Officers, but also injunctive relief that will meaningfully address the enduring practices and

policies Defendant City of Chicago has tolerated for years, which still permit blatant police misconduct like this to occur time and time again without consequence.

## PARTIES, VENUE, & JURISDICTION

2. Plaintiff James McDaniel is and was at all relevant times a resident of this judicial district.

3. Defendant Chicago Police Officers Matthew Sanchez, Star # 10159; Christian Szczur, Star # 18774; Pierre Tyler, Star # 10228; and Mohammed Ahmed, Star # 16497; are and were at all relevant times residents of this judicial district employed by Defendant City of Chicago as police officers acting under color of law.

4. Defendant City of Chicago is a municipal corporation in this judicial district organized under the law of the State of Illinois.

5. The Court has personal jurisdiction and venue is proper, because the parties are residents of this judicial district and the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

6. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, because Plaintiff asserts constitutional violations under 42 U.S.C. § 1983. The Court has supplemental jurisdiction over Plaintiff's state law counts under 28 U.S.C. § 1367.

## PLAINTIFF'S FALSE ARREST

7. On June 29, 2019, Plaintiff was driving a vehicle when he was stopped by the Defendant Officers.

8. Defendant Officers ordered Plaintiff out of the vehicle and unlawfully searched the car.

9. During the unlawful search of Plaintiff's vehicle, Defendant Officer Szczur falsely claimed to recover from the glove box "(1) KNOTTED BAG CONTAINING (26) CLEAR ZIP LOCK BAGS EACH CONTAINING A WHITE ROCK LIKE SUBSTANCE SUSPECT CRACK COCAINE."

10. Each of the Defendant Officers knew this claim was false and that the drugs had been planted. Each of the Defendant Officers supported this false claim and agreed to cooperate in falsely arresting and instituting narcotics charges against Plaintiff.

11. One of the Defendant Officers told Plaintiff on scene that Plaintiff was being arrested because the officer was unsuccessful in trying to arrest Plaintiff several weeks before. The officer said nothing about drugs being found in the car Plaintiff was driving.

12. After Plaintiff was placed into custody, the Defendant Officers purportedly performed an inventory search of the vehicle and Defendant Officer Ahmed purportedly recovered a handgun from a blue cloth bag in the rear compartment.

13. This claim was also false, each of the Defendant Officers knew the gun had been planted, yet they each agreed to cooperate in supporting this false claim and falsely arresting and charging Plaintiff.

14. After Plaintiff was arrested, the Defendant Officers cooperated in preparing false police reports falsely accusing Plaintiff of possessing a firearm and a controlled substance.

15. In an attempt to justify the Defendant Officers' unlawful search, Defendants prepared false police reports that falsely claimed that Plaintiff "WAS REACHING TOWARDS THE AREA OF THE GLOVE BOX" and that "A/O'S [sic] REASONABLY BELIEVED THAT ARRESTEE WAS CONCEALING UNKNOWN CONTRABAND."

16. Plaintiff never reached towards the glove box or did anything to suggest he was engaged in criminal activity.

17. The Defendant Officers' false claims were relayed to the Cook County State's Attorney's Office, which approved felony charges against Plaintiff for Unlawful Possession of Weapons by Felon (720 ILCS 5/24-1.1(a)), a Class 3 felony punishable by 2 to 10 years imprisonment; and Possession of Controlled Substance (720 ILCS 570/402-C), a Class 4 felony, punishable by 1-3 years imprisonment.

18. The Defendant Officers' false claims were also relied upon by the Cook County State's Attorney's Office and the bond court in setting bond and prosecuting Plaintiff for several months.

19. Plaintiff was forced to post bond and retain a lawyer to defend against the false charges instituted by the Defendant Officers.

20. Eventually, the Cook County State's Attorney's Office realized the Defendant Officers' claims were false and took the highly unusual move of voluntarily dismissing all charges against Plaintiff in or about December 2019.

## THE CITY'S WIDESPREAD POLICES

21. This matter is emblematic of the City's widespread and well-documented practice of covering up and failing to legitimately investigate officer misconduct, otherwise known as the Code of Silence, which continues to allow incidents like this to occur.

22. A number of City officials, including former Mayor Emmanuel, have admitted to the Code of Silence. As Mayor Emmanuel told the City Council in a December 9, 2015 speech:

> This problem is sometimes referred to as the Thin Blue Line. Other times it is referred to as the code of silence. It is the tendency to ignore, deny or in some cases cover-up the bad actions of a colleague or colleagues…We cannot asks citizens in crime-ravaged neighborhoods to break the code of

4

silence if we continue to allow a code of silence to exist without our own police department.

23. Former Police Superintendent Richard Brzeczek has publicly stated that a code of silence "has always existed in the police department."

24. In 2000, Alderman Beavers submitted an official resolution recognizing that "Chicago police officers who do not carry out their responsibility in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

25. Former Patrol Bureau Chief Eugene Williams has explained as follows:

> …The way it is done on the streets is to protect and cover for your partner at all cost, even at the expense of sacrificing every ounce of one's integrity. This culture has been all too evident when we investigate thousands of allegations where the partner of the accused never sees, or hear[s] of any inappropriate conduct although they work in very close proximity of each other during their entire tour of duty. Yet, within this culture it is considered righteous to cut corners and embellish on the facts in a case report or arrest report to win a case in court.

26. The operation of the City's Code of Silence can also be seen in a number of other matters involving the City's failure to legitimately investigate police misconduct, such as Officer Jason Van Dyke's fatal 2014 shooting of 17-year-old Laquan McDonald and a slew of lawsuits filed in this district. *See, e.g., LaPorta v. City of Chicago*, No. 14 C 9665, *Cazares v. Frugoli*, No. 13 C 5626; *Marcinczyk v. Plewa*, No. 09 C 1997; *Obrycka v. City of Chicago*, No. 07 C 2372; *Gilfand v. Planey*, No. 07 C 2566; *Johnson v. City of Chicago*, No. 05 C 6545; *Klipfel v. Gonzales*, No. 94 C 6415; *Garcia v. City of Chicago*, No. 01 C 8945.

27. In fact, in *LaPorta*, a jury determined that the City maintains *de facto* policies of failing to investigate officers accused of misconduct, failing to discipline officers who deserved it, and failing to maintain an early warning system to identify and correct problematic behavior.

28. In *Obrycka*, a jury likewise determined that the City maintains a widespread practice of failing to adequately investigate its police officers and/or tolerating a code of silence within the Police Department.

29. The prevalence of the Code of Silence within the Chicago Police Department was summarized in the Department of Justice's January 2017 report, which found that:

    (a)    The City, police officers, and leadership within CPD and the police union acknowledge that a code of silence among Chicago police officers exists, extending to lying and affirmative efforts to conceal evidence;

    (b)    Officers who simply witness misconduct and face no discipline by telling the truth choose instead to lie to protect other officers;

    (c)    The City treats such efforts to hide evidence as ancillary and unexceptional misconduct, and often does not investigate it, causing officers to believe there is not much to lose if they lie to cover up misconduct;

    (d)    CPD does not hold supervisors accountable for performing basic supervisory tasks, including reporting misconduct. Supervisors generally do not conduct any follow-up investigation or request any additional information from officers to help understand what happened;

    (e)    Those cases that are investigated suffer from serious investigative flaws that obstruct objective fact finding, including failure to interview civilian and officer witnesses; inappropriate coordination of testimony, risk of collusion, and witness coaching during interviews; cursory questioning aimed at justifying the officer's actions rather than seeking truth; failure to review and incorporate probative evidence from parallel civil and criminal proceedings; ignoring conflicts in testimony or with physical evidence; exaggerating evidence favorable to the officer; and extensive investigative delays;

    (f)    Due to longstanding, systemic deficiencies in its early intervention systems, the CPD does not adequately and accurately identify officers in need of corrective action and does not consistently or sufficiently address officer behavior even where CPD identifies negative patterns. Because of these failures, CPD officers are able to engage in problematic behaviors with impunity;

  (g)  The City paid over a half billion dollars to settle or pay judgments in police misconduct cases since 2004 without conducting disciplinary investigations in over half of those cases, and only recommending discipline in fewer than 4% of the cases it did investigate.

30. The City's Police Accountability Task Force Report, published in April 2016, similarly found that:

  (a)  The statistics give real credibility to the widespread perception that there is a deeply entrenched code of silence supported not just by individual officers, but by the very institution of CPD itself;

  (b)  The only conclusion that can be reached is that there is no serious embrace by CPD leadership of the need to make accountability a core value;

  (c)  IPRA failed to perform its work fairly, competently, or with rigor or independence, and demonstrated a record of incomplete and botched investigations;

  (d)  The City has sent a clear message that bad police officers are able to act with impunity and that police oversight bodies do not hold police officers accountable;

  (e)  When case after high-profile case results in punishment that does not match the gravity of the misconduct, it sends a message that the police can act with impunity and leaves those who break the rules emboldened to continue doing so;

  (f)  The City has largely ignored information regarding officer misconduct developed in civil rights litigation;

  (g)  There continues to be an unacceptably high number of lawsuits filed against the city and individual police officers every year. Despite this persistent problem, which results in the outlay of tens of millions of dollars every year, CPD does not employ a systematic tool for evaluating risk issues identified in lawsuits.

31. While the City claims to have implemented reforms in response to the well-publicized findings regarding the Code of Silence, such as replacing IPRA with the Civilian Office of Police Accountability, these measures haven't addressed the problem.

32. In fact, the City continues to allow Defendant Officer Szczur to wield a gun and a badge despite the fact that, in May 2018, Szczur shot an young man named Juan Mendez several times in the back while fleeing his own home and paralyzed this young man for life. Body camera footage of the incident shows Szczur shooting Mendez multiple times in the back after Mendez fell to the ground and got up to try to run away.

33. The City likewise failed to appropriately discipline Defendant Officers Szczur and Sanchez after COPA opened an investigation into a 2017 unlawful stop and search of a vehicle that had been attempted to be pulled over several times in the past.

34. COPA's report indicates that Szczur and Sanchez showed "evasiveness" during their COPA interviews. "They seemingly only recalled details convenient to them," they "appeared to withhold information and gave incomplete answers, largely claiming an inability to not [sic] recall what happened," and demonstrated "weaken[ed] credibility."

35. Despite these findings of weakened credibility, COPA still largely credited the officer's version of events, did not sustain any of the citizen's allegations, and only recommended a one-day suspension for failing to complete an investigatory stop report and failing to activate body worn camera. https://assets.documentcloud.org/documents/6532944/CRID-1088848-CR-COPA-Summary-Report.pdf

36. The impunity the City affords to police officers is also clearly demonstrated by the fact that the Defendant Officers in this case cooperated in framing Plaintiff for gun and drug possession while being recorded by body worn cameras, knowing that their fellow officers would cover up their actions.

37. Far from addressing the problem, the City continues to deny reality and defend problem officers at every turn – telling the public one thing, but practicing entirely another.

### COUNT I – 42 U.S.C. § 1983 FALSE ARREST AND UNLAWFUL DETENTION
### (Against the Defendant Officers)

38. Plaintiff realleges and reincorporates Paragraphs 1 through 37 as though set forth fully herein.

39. The Defendant Officers falsely arrested and unlawfully detained Plaintiff without probable cause on fabricated felony charges.

40. The misconduct described in this Count was unreasonable and in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

41. This misconduct described in this Count was malicious, willful, wanton, and/or undertaken with reckless indifference to Plaintiff's rights.

42. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages, including loss of liberty, mental and emotional distress, and legal fees.

### COUNT II – 42 U.S.C. § 1983 CONSPIRACY
### (Against the Defendant Officers)

43. Plaintiff realleges and reincorporates Paragraphs 1 through 37 as though set forth fully herein.

44. The Defendant Officers reached an agreement and conspired with each other to falsely arrest and charge Plaintiff with fabricated felony offenses in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

45. Defendants took overt acts in furtherance of the conspiracy that included preparing false police reports, making false claims to be included in police reports, failing to speak up in the face of fabricated evidence, and instead supporting the fabricated claims against Plaintiff so that Plaintiff could be arrested and prosecuted.

46. This misconduct described in this Count was malicious, willful, wanton, and/or undertaken with reckless indifference to Plaintiff's rights.

47. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages, including loss of liberty, mental and emotional distress, and legal fees.

### COUNT III – 42 U.S.C. § 1983 FAILURE TO INTERVENE
**(Against the Defendant Officers)**

48. Plaintiff realleges and reincorporates Paragraphs 1 through 37 as though set forth fully herein.

49. The Defendant Officers had a realistic opportunity to prevent Plaintiff from being falsely arrested and charged with fabricated felony offenses in violation of the Fourth and Fourteenth Amendments to the United States Constitution, but rather than take reasonable steps to intervene, conspired with one another to support these false charges.

50. The misconduct described in this Count was malicious, willful, wanton, and/or undertaken with reckless indifference to Plaintiff's rights.

51. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages, including loss of liberty, mental and emotional distress, and legal fees.

### COUNT IV – STATE LAW FALSE ARREST
**(Against All Defendants)**

52. Plaintiff realleges and reincorporates Paragraphs 1 through 37 as though set forth fully herein.

53. The Defendant Officers falsely arrested and unlawfully detained Plaintiff without probable cause based on felony charges they fabricated.

54. This misconduct described in this Count was malicious, willful, wanton, and/or undertaken with reckless indifference to Plaintiff's rights.

55. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages, including loss of liberty, mental and emotional distress, and legal fees.

56. The Defendant Officers engaged in this misconduct in their capacities as employees and/or agents of the City of Chicago, rendering the City liable under the doctrine of *respondeat superior*.

**COUNT V – STATE LAW MALICIOUS PROSECUTION**
**(Against All Defendants)**

57. Plaintiff realleges and reincorporates Paragraphs 1 through 37 as though set forth fully herein.

58. The Defendant Officers falsely arrested and charged Plaintiff without probable cause based on felony charges they fabricated.

59. Plaintiff was improperly subjected to sham criminal proceedings for which there was no probable cause.

60. These criminal proceedings were instituted and continued maliciously by the Defendant Officers.

61. The criminal proceedings terminated in Plaintiff's favor when the Cook County State's Attorney's Office voluntarily dismissed all charges against Plaintiff.

62. This misconduct described in this Count was malicious, willful, wanton, and/or undertaken with reckless indifference to Plaintiff's rights.

63. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages, including loss of liberty, mental and emotional distress, and legal fees.

64. The Defendant Officers engaged in this misconduct in their capacities as employees and/or agents of the City of Chicago, rendering the City liable under the doctrine of *respondeat superior*.

## COUNT VI – STATE LAW CONSPIRACY
### (Against All Defendants)

65. Plaintiff realleges and reincorporates Paragraphs 1 through 37 as though set forth fully herein.

66. The Defendant Officers reached an agreement and conspired with each other to falsely arrest and charge Plaintiff with fabricated felony offenses.

67. Defendants took overt acts in furtherance of the conspiracy that included preparing false police reports, making false claims to be included in police reports, failing to speak up in the face of fabricated evidence, and instead supporting the fabricated claims against Plaintiff so that Plaintiff could be arrested and prosecuted.

68. This misconduct described in this Count was malicious, willful, wanton, and/or undertaken with reckless indifference to Plaintiff's rights.

69. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages, including loss of liberty, mental and emotional distress, and legal fees.

70. The Defendant Officers engaged in this misconduct in their capacities as employees and/or agents of the City of Chicago, rendering the City liable under the doctrine of *respondeat superior*.

## COUNT VII – INDEMNIFICATION
### (Against the City)

71. Plaintiff realleges and reincorporates Paragraphs 1 through 70 as though set forth fully herein.

72. In Illinois, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 735 ILCS 10/9-102.

73. Defendants were employees of the City of Chicago and acted within the scope of their employment in committing the misconduct described herein.

## COUNT VII – *MONELL* LIABILITY
### (Against the City)

74. Plaintiff realleges and reincorporates Paragraphs 1 through 37 as though set forth fully herein.

75. The Chicago Police Department is a subsidiary division of Defendant City of Chicago. The City maintains and exercises exclusive control over the Department, its policies and procedures, as well as the conduct of all of its employees, including Defendants.

76. At the time of this incident and prior thereto, there existed within the Chicago Police Department a widespread and well-documented policy and practice of covering up and turning a blind eye to officer misconduct, and failing to legitimately investigate or discipline officers who engage in misconduct, otherwise known as the Code of Silence.

77. There likewise existed a widespread policy and practice of failing to maintain adequate early warning policies or procedures that would identify officers who engage in misconduct, and divert them to appropriate training and discipline.

78. These widespread policies and practices are well known to, tolerated by, and/or enforced by policymakers throughout all levels of the Police Department and the City administration, who have yet to take effective measures to address the systemic problems related to the Department.

79. As a result of these policies and practices, the City allows officers to act with impunity in engaging in misconduct, including fabricating evidence and false charges, knowing that their fellow officers, supervisors, and City officials will turn a blind eye to and cover up their actions.

80. Otherwise well-intentioned officers who would face no discipline for simply telling the truth frequently lie to protect officers who engage in misconduct.

81. These policies and practices were the direct and proximate cause of, and the moving force behind, the false arrest and unlawful detention of Plaintiff on fabricated felony charges.

82. The Defendant Officers engaged in this egregious misconduct knowing they would not be questioned or disciplined and that their fellow officers, supervisors, and City Officials would turn a blind eye to and cover up their actions.

83. The City's failure and refusal to legitimately address officer misconduct, including the fabrication of evidence and false charges, demonstrates a deliberate indifference to and tacit approval of this misconduct by members of its Police Department.

84. As a direct and proximate result of the City's unconstitutional policies and practices, Plaintiff suffered damages, including loss of liberty, mental and emotional distress, and legal fees.

**PRAYER FOR RELIEF**

Plaintiff James McDaniel respectfully requests that the Court enter judgment in his favor and against Defendants, awarding the following relief:

(1) Compensatory damages against all Defendants, including for loss of liberty, mental and emotional distress, and legal fees;

(2) Punitive damages against the Defendant Officers in an amount sufficient to punish and deter future misconduct;

(3) Injunctive relief against the City that will address its widespread policies and practices, including legitimate review of all complaints regarding the Defendant Officers' actions as Chicago Police officers;

(4) Attorney fees, costs, expenses, and post-judgment interest against all Defendants;

(5) Such other and further relief that the Court deems just.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATE:  June 7, 2020

Respectfully Submitted,

JAMES MCDANIEL

By:  /s/ Marko Duric

Robert Robertson
Marko Duric
ROBERTSON DURIC
One North LaSalle, Suite 300
Chicago, Illinois 60602
(312) 223-8600
rob@robertsonduric.com
marko@robertsonduric.com